# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LATON JAMES, | ) |
|     Plaintiff, | ) No. 17 C 3037 |
|     v. | ) Magistrate Judge M. David Weisman |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Laton James brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration ("SSA's") decision denying his application for benefits. For the reasons set forth below, the Court reverses the SSA's decision.

## Background

Staring on March 1, 2001, plaintiff was given childhood disability benefits because of a learning disorder and epilepsy. (R. 79.) After plaintiff turned eighteen, the SSA reviewed his eligibility for benefits and determined that his disability had ended in March 2013. (R. 65-66.) Plaintiff requested reconsideration of that decision, which was denied. (R. 74-75, 88-90.) Plaintiff appealed the decision to an Administrative Law Judge ("ALJ"), who held a hearing on September 1, 2015. (*See* R. 29-64.) The ALJ found that plaintiff has not been disabled since March 31, 2013. (R. 13-26.) The Appeals Council denied review (R. 1-3), leaving the ALJ's decision as the final decision of the SSA. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the SSA must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the SSA to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had been eligible for benefits as a child, but was found no longer disabled as of March 31, 2013. (R. 15.) At step two, the ALJ found that, since May 31, 2013, plaintiff has had the severe impairment of "learning disability/borderline intellectual functioning." (*Id.*) At step three, the ALJ found that, since March 31, 2013, plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 16.) At step four, the ALJ found that plaintiff has no past relevant work (R. 24) but, since March 31, 2013, has had the RFC to "perform a full range of work at all exertional levels" with certain environmental limitations, "can understand, remember, and carry out instructions that are limited to the performance of simple, routine repetitive tasks," and "can make . . . simple, work-related decisions," but would "require[] reminders from his supervisors to perform simple, routine repetitive tasks once per day." (R. 19.) At step five, the ALJ found that, since March 31, 2013, there have been a significant number of jobs in the national economy that plaintiff can perform, and thus he is not disabled. (R. 24-25.)

The ALJ said that plaintiff does not meet listing 12.05D for intellectual disorder, a conclusion plaintiff contends is erroneous. At the time of the ALJ's decision, that listing required:

> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, App'x 1, Listing of Impairments § 12.05D (eff. to May 13, 2016). Plaintiff has a full scale IQ of 68 (R. 506), but the ALJ said plaintiff was only mildly restricted in social functioning, moderately restricted in activities of daily living ("ADLs"), and had moderate difficulties in maintaining concentration, persistence or pace. (R. 16-17.) Plaintiff says the last two conclusions are flawed.

3

ADLs "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for . . . grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, App'x 1, Listing of Impairments § 12.00C (eff. to May 13, 2016). A "marked" restriction in ADLs is not defined "by a specific number of different [ADLs] in which functioning is impaired, but by the nature and overall degree of interference with function." (*Id.*) A claimant may be markedly limited in ADLs, if he has "serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions." (*Id.*) With respect to ADLs, the ALJ said:

> . . . . The claimant testified that he is able to dress, shower, and prepares meals independently. Similarly, the claimant's IEP for 11th grade indicated that he is able to groom, feed, and clothe himself independently and he is capable of transferring himself from home to school independently. However, the claimant testified he has never taken a bus by himself that either his mom or dad accompanies him on the bus. The claimant's parents each reported that the claimant does not know how to take public transportation and believe he would get lost.

(R. 17) (citations omitted).

First, the ALJ did not even address most of the ADLs, including whether plaintiff can clean, shop, pay bills, maintain a residence, and use directories and the post office. Second, the ALJ's conclusion that plaintiff can travel independently is not supported by the record. Plaintiff's eleventh grade IEP, the only evidence the ALJ cites for finding that plaintiff can travel independently, states that plaintiff is "eligible for transportation as a related service" because he "is unable to travel alone" and "needs support to travel to and from school." (R. 469.) In short, the ALJ's finding that plaintiff is only moderately limited in ADLs is not supported by substantial evidence.

Plaintiff also contests the ALJ's conclusion that plaintiff is only moderately restricted in concentration, persistence, and pace, *i.e.*, "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, App'x 1, Listing of Impairments § 12.00C (eff. to May 23, 2016). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* ALJs are instructed to:

> [E]xercise great care in reaching conclusions about [a claimant's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [his/her] ability to complete tasks in other settings that are less demanding, highly structured, or more supportive. [ALJs] must assess [a claimant's] ability to complete tasks by evaluating all the evidence, with an emphasis on how independently, appropriately, and effectively [he/she is] able to complete tasks on a sustained basis.

*Id.*

With respect to this area of plaintiff's mental functioning, the ALJ said:

> The claimant graduated from high school in June 2013. At the hearing, [he] testified he watches movies and television shows on cable and can sit through a whole show and he plays video games on Play Station 3 and he can advance to the next level. The claimant could also correctly subtract 17 dollars from 20 dollars at the hearing. Therefore, the weight of the evidence supports a finding that the claimant has a moderate restriction in this area.

(R. 17) (citations omitted). The Seventh Circuit, however, has rejected the notion that the ability to play video games and watch television signals the ability to do full-time work. *See Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015) (reversing ALJ's decision, in part, because he assumed that "doing limited online research or playing video games online requires the same concentration as is required for full-time employment"); *Taylor v. Colvin*, 829 F.3d 799, 801 (7th Cir. 2016) ("The administrative law judge conjectured that because Taylor is 'a young adult' who can play

5

video games . . . , she may experience 'increased function with maturity.'. . . But there is no evidence to support the administrative law judge's conjecture. And he ignored the doubt we expressed in [*Voigt*] that playing video games requires the same level of concentration as working full time."); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (expressing skepticism "that the ability to watch television for several hours indicates a long attention span"). Thus, the ALJ's conclusion that plaintiff is only moderately limited in concentration, persistence, and pace is not supported by substantial evidence.

Plaintiff further argues that the ALJ erred in assigning "little weight" to the opinion of plaintiff's treating physician, Dr. Colleton. (*See* R. 22.) An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2).[1] "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

Among other things, Dr. Colleton opined that plaintiff was "unable to manage ADLs or travel independently" and either "markedly" or "extremely" limited in his ability to: (1) "maintain attention and concentration for extended periods"; (2) "sustain an ordinary routine without special supervision"; (3) "make simple work-related decisions"; (4) "respond appropriately to changes in the work setting"; (5) "be aware of normal hazards and take appropriate precautions"; (6) "travel

---

[1] This regulation was amended effective March 27, 2017, but the cited language was not changed.

in unfamiliar places or use public transportation"; and (7) "set realistic goals or make plans independently of others." (R. 649, 651-53.)

The ALJ said this about Dr. Colleton's opinions:

> Dr. Colleton . . . noted that [plaintiff] has a developmental delay and learning disabilities and he "is unable to manage ADLs or travel independently." The undersigned assigns little weight to this report, as it appears based primarily on the subjective reports of the claimant's mother regarding the claimant's limitations in performing activities of daily living, rendering her opinion less persuasive. Indeed, Dr. Colleton's treatment records note that "Mom reports that [the claimant] is intellectually limited: he does not travel alone or manage ADLs." . . .
>
> Dr. Colleton opined . . . that the claimant was "markedly limited" in his ability to maintain attention and concentration for extended periods and in his ability to respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation. . . . [A]s a primary care physician, nothing in the record suggests that Dr. Colleton has any expertise in mental health issues.

(R. 22-23) (citations omitted).

First, the quotation that starts "Mom reports" does not appear in the document the ALJ cites for it. (*See* R. 658.) Second, even if the evidence showed that Dr. Colleton relied heavily on reports from plaintiff's mother, the ALJ does not explain why that would be inappropriate, given the demonstrated limitations in plaintiff's intellectual functioning. (*See e.g.,* R. 506 (consultative examiner concluding that plaintiff has a full scale IQ of 68); R. 551 (grade twelve IEP noting that plaintiff "continues to present with significant deficits in reading comprehension, organization, grammar, and ability to elaborate during social interactions"); R. 448 (grade eleven IEP noting that plaintiff's "[v]erbal responses are short and he requires prompting to explain, describe and/or expand on an idea or topic"); R. 334 (grade nine IEP stating that plaintiff is "quiet, soft spoken[,] . . . often reluctant to communicate," "exhibits difficulty following directions [and] completing assignments," and "does not ask for assistance or volunteer information in class").) Third, the record shows that Dr. Colleton did not rely solely on reports from plaintiff's mother but on her

7

own observations of plaintiff as well. (*See* R. 653 ("[Patient] is pleasant but does not interact with this provider at the expected level of a 21 [year old male].").) Finally, though the ALJ only discussed a few of Dr. Colleton's opinions, she rejected *all* of them and did so without considering the regulatory factors required for assessing medical evidence. *See* 20 C.F.R. § 404.1527(c). In short, the ALJ erred in rejecting Dr. Colleton's opinions wholesale.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [16], denies the Commissioner's motion for summary judgment [20], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                   **ENTERED:  July 17, 2018**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**